### BLISS v. ANACONDA COPPER MINING CO. et al.

(Circuit Court, D. Montana. October 21, 1907.)

#### No. 280.

EQUITY—REFERENCE TO MASTER—PROCEDURE.

Where a Circuit Court has referred an equity cause to a master to make and report findings of fact, either with or without consent, it is proper practice for the master to submit a draft of his report to counsel for the respective parties, for the purpose of inviting suggestions or requests for additional findings, or for modifications or greater certainty in those submitted; and it is the duty of counsel in such case to make and file with the master such objections or exceptions to the draft as they deem advisable and proper, and it is within the discretion of the court to refuse to consider any objections or exceptions to the completed report not presented to the master. It is also convenient practice to provide by stipulation or order that objections filed before the master shall stand as exceptions filed with the clerk.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, § 907.]

In Equity. On motion to require master to file report.

An order of reference was made in this case against the objection of the complainant. The substance of the order was that the master should take the testimony, and make findings of fact, and report the same to the court. The master made a draft of his findings, and gave to each party a copy thereof, and announced that, upon a day fixed, he would receive from the respective counsel any written objections, exceptions or proposed amendments to the draft served. Counsel for complainant objected to the action of the master, and demanded that he file his report, together with his findings, with the clerk of the circuit court, as provided in equity rule 83 of the rules of practice of the Supreme Court. But the master declined to follow this course. Thereafter the complainant moved the court for an order to require the master to file his findings of fact, together with his report of the testimony and proceedings. It is contended that in setting a time to receive exceptions to his report the master violated equity rule 83 of the Supreme Court, and that his

said action was also in violation of rule 52 of the rules of practice of the Circuit Court in and for the District of Montana. Rule 52 of the rules of this court relates to hearings in equity and references where consent for reference has been had. It is provided in the rule that the findings and conclusions of the master will be subject in all respects to review by the court upon exceptions to his report, which exceptions shall be taken before the master and stated in his report.

C. M. Sawyer and R. L. Clinton, for complainant.

A. J. Shores, C. F. Kelley, D. Gay Stivers, and Forbis & Evans, for defendants.

HUNT, District Judge (after stating the facts as above). The reference in this case having been without consent of both parties, rule 52 of the rules of the court is not directly applicable. That rule presupposes reference by consent. In such cases it is plain that exceptions to the report of the master must be taken before him and stated in his report. Therefore, as there is no rule of court that controls, we must arrive at a proper practice by reason and analogous cases. There can be no doubt that the information to be communicated by the findings of the master upon the evidence he has heard will be merely advisory to the court. The court may accept them, by adopting the same views the master has taken, or it may disregard them, or act upon them in part, or modify or reject them, or any of them, as in the judgment of the court the weight of the evidence may warrant. This is clearly the implied doctrine of the opinion of the Supreme Court in Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764. The findings will be the advice, however, of a trained and impartial mind, which has weighed the evidence fully and formulated deductions therefrom.

That the court had power to seek the aid of an examiner is well established, and, having pursued the practice of directing a reference, it should not attempt to circumscribe the procedure before the master by preventing him from having every aid of counsel before finally making up his report. There is a palpable distinction between a final report of a master upon matters submitted to him and a draft of a report upon such matters laid before respective counsel as the basis for a report. The report embodies the final, ultimate conclusions of the master, and when it has been signed by him and filed with the court the case is entirely removed from the control of the master. It may be sent back to him by the court under some special order, as, for instance, to supply a technical or clerical error, or that there may be a finding upon some material matter which has not been found upon at all; but until the essential formalities of a report are complied with, there is no report. The paper or draft is a mere preliminary expression by the master, subject to revision by amendment, or even change of judgment upon the effect of the evidence, or by modification of his conclusions, as he finally finds proper and right. He may invite counsel to give him the benefit of argument upon some point upon which there was none, or ask for further argument where his mind is not satisfied. In other words, where there is no suggestion of intentional abuse of authority, or of unreasonable delay or wrong on the part of the master, he has the right to announce proba-

ble findings, and to ask that counsel make any objections or suggestions to the same or any part thereof as they believe should be made. This practice enables the master to perfect his report, and, where there may have been a large amount of evidence, it would seem a most appropriate practice for the master to express his opinion in this informal way, in order to give counsel opportunity to aid him further in his efforts to perform his duty as completely as possible by covering all the material issues, finding accurately thereon. From the standpoint, too, of aiding the court, the master may exercise the right of correction and revision, or reconsideration. A court, in seeking the aid of a master, desires that the report may be as finished as would the court have its own findings, were the evidence heard by the judge himself.

Under the former English practice, the master made a draft of his report, notified counsel of his proposed findings, gave them an opportunity to point out errors, and the master considered and corrected them. In Story v. Livingston, 13 Pet. 357, 10 L. Ed. 200, in 1839, which was before the equity practice rules were promulgated, the Supreme Court recognized that strict chancery practice refused to permit exceptions to a master's report to be made which were not taken before the master, although the court did not restrict exceptions to the course indicated. Equity rule 83 requires the master, as soon as his report is ready, to return the same into the clerk's office, and then the parties "shall have one month from the time of filing the report to file exceptions thereto, and if no exceptions are within that period filed by either party the report shall stand confirmed on the next rule day after the month is expired." In the Seventh Circuit, Judge Gresham, in Hatch v. Railroad Company (C. C.) 9 Fed. 856, held that rule 83 modified the old English practice; and the same view was taken by the court in Fidelity Insurance & Safe Deposit Co. v. Shenandoah Iron Co. (C. C.) 42 Fed. 372. But in the later case of Celluloid Mfg. Co. v. Cellonite Mfg. Co. (C. C.) 40 Fed. 476, Judge Wallace held that while the reason of the old English practice does not fully obtain, yet a dissatisfied party should be required to state his objections before the master. And in the still later case of Gay Mfg. Co. v. Camp, 68 Fed. 67, 15 C. C. A. 226 (1895), the Court of Appeals of the Fourth Circuit held that equity rule 83 was not a modification of the English chancery practice, and that, where a party desires to contest the findings of fact made by a master, he must base his exceptions upon objections previously filed in the master's office. The court that heard the argument upon what was the correct practice was composed of Chief Justice Fuller and Judges Simonton and Goff. Judge Simonton, speaking for the court, characterized the filing of exceptions to a master's report dealing with facts to which his attention was never called as a "loose" one, which did not commend itself. He said:

"It frequently operates a surprise, and it shuts the door to any explanation. It gives room for the display of skill and strategy on the part of ingenious counsel. It may secure success at the expense of right. * * * To prevent misapprehension, it is best to state that we do not require the conclusions of the master on matters of law to be first excepted to before him. This is unnecessary. But we do require that matters of fact upon which exceptions

to his report are made be brought to his attention, in order that he might report them."

In Gray v. New York N. B. & L. Ass'n (C. C.) 125 Fed. 512, Judge Platt has recently decided that a party dissatisfied with a master's findings of fact should make his objections thereto to the master, and where that is not done the court will not consider an exception to a finding on the ground that facts were omitted which should have been found. Similar practice prevails in the Sixth Circuit, where Judge Severens regards the English chancery practice as still obtaining, and holds that a party desiring to contest the findings of fact made by a master must, as a basis for exceptions, file objections with the master and have the same passed upon by him. He is also reported to have refused to consider exceptions to a master's report which were not founded on written objections made to the draft of the report while it was still in the master's hands. Henderson's Chancery Practice, § 372. In Columbus S. & H. R. Co. Appeals, 109 Fed. 177, 48 C. C. A. 275, the Court of Appeals of the Sixth Circuit held that it was proper to object to a master's report before it left his hands.

In Henderson's Chancery Practice there is a very clear and exhaustive statement of the practice prevailing throughout the several judicial circuits, together with the decisions up to 1903. The author shows a diversity of practice, and argues that an amendment to equity rule 83 would be well, in order to settle the question whether objections before the master should be done away with entirely, thus allowing exceptions to be taken for the first time after the coming in of the report, or the master should be required to follow the English practice. The author himself commends the old chancery practice. The only decision that has been brought to my attention, or that I have been able to find by my own research, in our Ninth Circuit, is McNamara v. Home Land & Cattle Co. (C. C.) 105 Fed. 204, where Judge Knowles expressed the opinion that the English practice still prevailed, and refused to consider objections that were not presented to the master.

Referring to rule 52 of the rules of this court, which is taken literally from the rules of the Circuit Court for the Northern District of California, it appears that upon a consent reference exceptions to the report must be taken before the master, who is required to state the exceptions in his report, and "such exceptions" are for hearing before the court. There is, therefore, at least a partial adoption of the English practice, in that the dissatisfied party must make objections before the report is filed by the master, and in that the court will act upon the exceptions brought to the attention of the master. Whether the court will permit other exceptions after the report is filed is not altogether certain, but inferentially it will not. True, the cases cited above were where consent was given for reference; but the principle which recognizes a reference as a process to develop facts should control, and ought to be of the same general application, whether reference has been had by consent or not. After reading many of the cases, my judgment is that the master or examiner is authorized to submit a draft of his report to counsel for the respective parties, for the purpose

of inviting suggestions or requests for additional findings, or for modifications of or greater certainty in those submitted. Under this practice it becomes the duty of counsel to make to the draft submitted by the master such objections or exceptions as they find advisable and proper. The duty of counsel is to make their objections or exceptions as full and fair as they would make them before the court, and as if in the first instance they were before the court. If the master wishes brief argument, he may ask for it. Thereafter the master should consider the objections, suggestions, and exceptions, and act upon them as his judgment dictates, and then make up his report, which should be accompanied by the objections and exceptions interposed and his action thereon.

When the report is filed with the clerk, equity rule 83 obtains, and the dissatisfied party should proceed "to file exceptions" to the report. If the master has reformed his findings by allowing the exceptions made before him, there is, of course, no necessity for filing any exceptions to the report; but, if he has failed to do so, the dissatisfied party should within the time allowed by rule 83 file his exceptions with the clerk. It is a convenient practice for the parties to stipulate, or for the court to make an order, that the objections filed before the master shall be the exceptions filed with the clerk. This saves needless duplication of work. It being, therefore, within the power of the master to fix a time for making objections to his draft, and the duty of counsel to make their objections, if any they have, it logically follows that, unless a dissatisfied party does make his objections before the master, the court may, within its discretion, refuse to consider any objections as exceptions which have not been presented to the master. This practice finds approval in McMicken v. Perin, 18 How. 507, 15 L. Ed. 504, and in Sheffield, etc., Railway Co. v. Gordon, 151 U. S. 285, 14 Sup. Ct. 343, 38 L. Ed. 164, decisions rendered by the Supreme Court after equity rule 83 was adopted, and in the opinions by Justice Bradley, sitting as a circuit judge, in Cowdrey v. Railroad Co. et al., Fed. Cas. No. 3,293, decided in 1870, and Gaines v. New Orleans, Fed. Cas. No. 5,177, decided in 1871.

It may be that, in a case where the record is very large and the issues numerous, in filing exceptions to a report, counsel will desire to amplify those filed to the draft submitted by the master, or to supplement them by exceptions not presented before the master. While this is a practice not to be encouraged, yet, within reasonable limitations, the court may permit it. By that I mean that, where counsel have fairly and fully given the master the benefit of their positions by so inviting his attention to any errors or omissions on his part as to have given him opportunity to correct or change his report, yet additional objections have occurred to counsel, which were not laid before the master, and which they could not have fairly presented to the master in their objections before him, the court, in its discretion, may not refuse to consider such amplified or additional exceptions. As indicated, though, better practice under the authorities is against such consideration, except under special circumstances.

I trust that counsel may be aided by these views, which lead to the denial of the motion of the complainant.